UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael A. COBLEIGH (94–2219), Dick C. Cook (94–2221), David A. Frazee (94–2268), Willis E. Clark (94–2327), and Donald E. Clark (94–2328), Defendants–Appellants.

Nos. 94–2219, 94–2221, 94–2268, 94–2327 and 94–2328.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1995.

Decided Feb. 2, 1996.

---

Jennifer J. Peregord (argued and briefed), Christopher P. Yates, Office of U.S. Attorney, Detroit, MI, for U.S. in Nos. 94–2219, 94–2327 and 94–2328.

Jennifer J. Peregord (briefed), Christopher P. Yates, Office of U.S. Attorney, Detroit, MI, for U.S. in Nos. 94–2221 and 94–2268.

Christian Michael Gorte (argued and briefed), Bay City, MI, for Michael A. Cobleigh, Sr.

Stevens J. Jacobs (briefed), Brady & Plachta, Bay City, MI, for Dick C. Cook.

David A. Frazee (briefed), Morgantown, WV, pro se.

David G. Myers (argued and briefed), Caro, MI, for Willis E. Clark.

Russell J. Perry, Jr. (argued and briefed), Saginaw, MI, for Donald E. Clark.

Before: SILER and MOORE, Circuit Judges, and FORESTER, District Judge.*

FORESTER, District Judge.

The appellants, Michael A. Cobleigh, Dick C. Cook, David A. Frazee, Willis E. Clark, and Donald E. Clark, appeal their convictions on various charges of conspiracy, wire fraud, and bankruptcy fraud. Additionally, Cook, Frazee, W. Clark, and D. Clark appeal their sentences. We affirm.

**I**

On April 13, 1994, a federal grand jury returned a thirty-eight count indictment against Cobleigh, Cook, Frazee, W. Clark, D. Clark, Katherine D. Clark, Phillip L. Lindle, John R. Bond, Daniel S. Scribner, and Annette M. Moody, charging them variously with wire fraud, bankruptcy fraud, and conspiracy to commit wire fraud. The "bustout" scheme in question involved setting up a wholesale business at a temporary location, placing orders by telephone to legitimate businesses, taking delivery of merchandise shipped on credit, disposing of the goods received at below fair market value, and making no or only minimal payments for the goods received on credit. After operating at a given location for a short period, the "business" would abruptly close without notice, usually with a balance due on the defendants' rental or lease agreement. A new wholesale "business" under a different name, but operated by one or more of the defendants named

---

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

in the indictment, would then open at a different location.

In order to facilitate their "bustout" scheme, credit references were necessary to induce suppliers to ship merchandise to the bogus businesses on credit. Members of the conspiracy gave false credit references for the businesses and made fraudulent assurances to creditors for the purpose of forestalling collection efforts. Creating the illusion of reliable credit references was essential to the success of the sham operation.

Two of the codefendants, Phillip Lindle and Daniel Scribner, pled guilty prior to trial and testified against the remaining eight defendants who proceeded to trial. During the trial, the district court repeatedly instructed the jury that it must give each defendant separate consideration. On June 30, 1994, the jury returned a verdict of guilty against all five of the appellants on the conspiracy charge. While the jury acquitted several of the defendants of specific counts, Cobleigh was convicted on one count of wire fraud and one count of bankruptcy fraud, and was sentenced to concurrent 57 month terms of imprisonment, 3 years of supervised release, and a fine of $12,500.00; W. Clark was convicted of two counts of wire fraud, and was sentenced to concurrent 38 month terms of imprisonment, 3 years of supervised release, and a fine of $7,500.00; D. Clark was convicted of eight counts of wire fraud, and was sentenced to concurrent 60 month terms of imprisonment and 3 years of supervised release. Frazee was acquitted of all other charges and was sentenced to a 24 month term of imprisonment, followed by 3 years of supervised release on the conspiracy conviction. Cook, who was also acquitted of all other charges, was sentenced to a 39 month term of imprisonment, 3 years supervised release, and a fine of $7,500.00 on the conspiracy conviction. Bond did not appeal his conviction and sentence. K. Clark and Moody were placed on a consolidated, expedited appeal schedule due to the brevity of their sentences. Their convictions were affirmed in *United States v. Burton*, 65 F.3d 169, 1995 WL 506994 (6th Cir.1995). The appellants filed timely notices of appeal.

## II

The appellants assert the following issues on appeal:

(1) Whether prosecutorial misconduct deprived the appellants of a fair trial;

(2) Whether the district court erred in denying the appellants' motions for severance;

(3) Whether the evidence was sufficient to convict Cobleigh, Frazee, and W. Clark of conspiracy;

(4) Whether the district court improperly admitted evidence challenged by Cobleigh, Cook, and Frazee;

(5) Whether alleged cumulative error deprived Frazee of due process of law;

(6) Whether Cook, Frazee, and W. Clark were sentenced in accordance with the Sentencing Guidelines; and

(7) Whether perjured testimony was submitted to the grand jury.

Each of these issues will be addressed below.

## III

### A. PROSECUTORIAL MISCONDUCT

The appellants argue that several statements made by the government during the course of the trial were so improper and inflammatory that a mistrial was warranted. In support of their argument, the appellants point to the following remarks made by the prosecutor:

*Opening Statement*

1) collective reference to "thieves" and "swindlers"

2) types of defenses in "cases like this . . ."

3) defense arguments may be "dressed up a little . . ."

*Closing Argument*

4) evidence as "unrefuted" or "unrebutted"

5) allegation that Cobleigh "never filed a state sales tax return"

*Rebuttal*

6) two comments suggesting that defense counsel hoped to succeed in confusing

and/or distracting the jury so that their clients would be acquitted as a result

7) single reference to "the defense side of the aisle"

8) "defenses are really limited in cases like this ..."

9) the alleged "sarcastic tone" of a comment regarding a defense of being charged with the "wrong conspiracy"

10) "At least Lindle and Scribner ... plead guilty to conspiracy"

11) reference to the grand jury's decision to indict

12) "we feel that the evidence has substantiated their involvement under the law that the judge has given you"

 As a general rule, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context." *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). This Court recently constructed a framework to review claims of prosecutorial misconduct. *United States v. Carroll*, 26 F.3d 1380, 1384–90 (6th Cir.1994). First, the court should determine if the prosecutor's statements were improper. *Id.; see also United States v. Bess*, 593 F.2d 749 (6th Cir.1979). Then, if the statements were improper, the court must determine if the impropriety was flagrant under *United States v. Leon*, 534 F.2d 667 (6th Cir.1976). *Carroll*, 26 F.3d at 1385. To determine flagrancy, the court should consider four factors:

(1) whether the remarks tended to mislead the jury or to prejudice the accused [including whether the trial judge gave an appropriate cautionary instruction to the jury];

(2) whether they were isolated or extensive;

(3) whether they were deliberately or accidentally placed before the jury; and

(4) the strength of the evidence against the accused.

*Id.* at 1385 (quoting *Leon*, 534 F.2d at 678–83). If the comment is determined not to be flagrant, we will reverse only "when (1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to

the conduct, and (3) the district court failed to give a curative instruction." *United States v. Brown*, 66 F.3d 124, 127 (6th Cir. 1995) (citing *Carroll*, 26 F.3d at 1384–90).

While the prosecutor's comment that "at least Lindle and Scribner walked into a federal courtroom and said I plead guilty to conspiracy" was improper, it certainly does not satisfy the *Leon* test for flagrancy as it was isolated and inadvertent. Similarly, the prosecutor's characterization of the evidence as "unrefuted" and "unrebutted," which was objected to by the defendants at trial, was not flagrant. The district court repeatedly instructed the jury that the prosecution bore the burden of proof, and that no defendant is required to present evidence.

The remaining statements by the prosecutor, when viewed in context, were not improper. The appellants' complaints of prosecutorial misconduct focus on a few unrelated statements and events from an eight-defendant trial that lasted one month and involved the testimony of dozens of witnesses and the presentation of more than 200 exhibits. The proof of guilt against the appellants was overwhelming. With the exception of the prosecutor's characterization of the evidence as "unrefuted" and "unrebutted," the appellants failed to contemporaneously object to any of the comments. Moreover, there is no indication that the challenged comments were "anything but isolated, inadvertent remarks on the part of the prosecution." *Brown*, 66 F.3d at 127. Thus, prosecutorial misconduct, if any, was harmless error. *See also United States v. Burton*, 65 F.3d 169 (6th Cir.1995).

## B. SEVERANCE

 Appellants argue that the trial judge erred in denying their motions for severance. Generally, there exists a "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). "The jury must be presumed capable of sorting out the evidence and considering the cases of each defendant separately." *United States v. Moore*, 917 F.2d 215, 222 (6th Cir.1990),

*cert. denied,* 499 U.S. 963, 111 S.Ct. 1590, 113 L.Ed.2d 654 (1991). However, courts should grant a severance if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* at 539, 113 S.Ct. at 938. The burden is on the appellants to produce "a strong showing of factually specific and compelling prejudice" that will "mislead or confuse the jury." *Moore,* 917 F.2d at 221 (quoting *United States v. Vinson,* 606 F.2d 149, 154 (6th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 319 (1980)). In other words, the appellants "must demonstrate the jury's inability to distinguish the evidence relevant to each defendant." *Id.* In the event the appellants are "able to show some potential jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials." *Id.* (citing *United States v. Benton,* 852 F.2d 1456, 1469 (6th Cir.), *cert. denied,* 488 U.S. 993, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988)).

Appellants Cobleigh and W. Clark contend that they were entitled to separate trials because a varying array of their codefendants would have presented some generic "substantially exculpatory testimony" at a separate trial. However, in order to qualify for severance on this ground, a defendant is required to set forth before the trial judge the substance of the proposed testimony and its exculpatory effect and to demonstrate that the codefendants would in fact testify at a severed trial. *United States v. Causey,* 834 F.2d 1277, 1287 (6th Cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988). This was not done.

■ Appellants Cobleigh, Frazee, W. Clark, and D. Clark also argue that they were entitled to separate trials because redacted co-conspirator statements were impermissibly introduced against them, in violation of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). According to the Supreme Court:

> A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot

be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice.

*Id.* at 132, 88 S.Ct. at 1625–26 (citing the Advisory Committee on the Federal Rules of Criminal Procedure).

However, the Supreme Court has also held:

> The Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.

*Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). Furthermore, this court has held that *Bruton* does not bar the use of a redacted codefendant's confession "even if the codefendant's confession becomes incriminating when linked with other evidence adduced at trial." *United States v. DiCarlantonio,* 870 F.2d 1058, 1062 (6th Cir.), *cert. denied,* 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989). The record confirms that the co-conspirator statements were redacted to omit both direct and identifiable indirect references to these appellants. As the jury is presumed capable of sorting out the evidence and considering the case against each defendant separately, the appellants have failed to demonstrate an abuse of discretion.

## C. SUFFICIENCY OF EVIDENCE

■ Appellants Cobleigh, Frazee, and W. Clark contest the sufficiency of the evidence supporting their convictions. The standard for overturning a conviction based on insufficient evidence is "whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The court must give "full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Cobleigh's primary complaint is that Lindle's testimony was entitled to no weight as a matter of law because it was contradictory and "uncorroborated by any other non-civilian Government witness." Cobleigh, however, fails to cite any pertinent case law to support his position. Moreover, Cobleigh admits that the trial judge allowed wide latitude in cross-examining Lindle. The jury was informed of the plea agreements and was instructed to weigh this factor when considering the believability of witnesses. Thus, Cobleigh's complaint is without merit.

■ Frazee contends that he lacked the necessary authority to be guilty of the conspiracy. However, evidence was introduced that tended to show that Frazee placed orders for merchandise and sold goods at flea markets and auction sales. These actions were enough for the jury to infer the requisite intent for conspiracy.

■ Finally, W. Clark argues that although he allowed the codefendants to use his name and business as a credit reference and gave the codefendants positive credit references, the evidence did not show that he had knowledge of their intent to defraud creditors. W. Clark contends that he was in Florida during the time of the conspiracy, that he was not paid for his services, and that the credit ratings he gave were not "fraudulent" because he "had done business with and successfully extended credit to these individuals in the past." Therefore, W. Clark alleges that he should not have been convicted for conspiracy to commit wire fraud. The evidence, however, indicates that W. Clark knew of the conspiracy and that he made false statements in referencing the defendants' businesses. Clearly, a jury could rationally find that W. Clark was engaged in the conspiracy.

## D. ADMISSIBILITY OF EVIDENCE

■ Cook and Frazee object to particular evidentiary rulings made by the trial judge. Cook contends that he was unfairly prejudiced by the admission of a statement made by Cobleigh's daughter which could be construed as a threat. Specifically, Tammy Helms, the girlfriend of Bond, testified that Cobleigh's daughter told her that "there was a lot of people involved with money and somebody could get hurt." However, this "threat" was not made to and did not otherwise involve Cook. Moreover, it was made clear to the jury that Helms did not construe the comment as a threat. Cook's attorney, on cross-examination, was able to elicit from Helms that she had never seen, talked to or known Cook. Thus, Cook was not prejudiced by the admission of this statement.

■ Frazee objects to the identification of him by a law enforcement police agent in photographs and on a videotape taken at one of the conspirator's premises. Frazee relies on *United States v. Calhoun*, 544 F.2d 291, 294–95 (6th Cir.1976), in which this court discussed the impropriety of law enforcement personnel testifying for the purpose of making an ordinary identification. The holding in *Calhoun*, however, was narrowed in *United States v. Maddox*, 944 F.2d 1223, 1231 (6th Cir.), *cert. denied*, 502 U.S. 950, 112 S.Ct. 400, 116 L.Ed.2d 349 (1991), when the court stated:

> *Calhoun* was a factually unique case, distinct from this case in several key respects. In *Calhoun*, the government called the defendant's parole officer as a witness for the sole purpose of identifying him from a photograph. We held that, under the unique circumstances of the case, the defendant was illegitimately deprived of the right to cross-examine the witness. We reasoned that, if the jury found out about the nature of the relationship between the two of them, the jury could infer that the defendant had a prior criminal record. Thus, because of the preexisting relationship between the two, the defendant would have had to go into highly prejudicial matters in order to explore possible motives that his former parole officer might have had in identifying him.

As no such concerns exist in the instant case, any prejudice to Frazee was harmless.

## E. CUMULATIVE ERROR

■ Frazee also contends that his right to due process of law was violated by cumulative error. Specifically, Frazee points to the judge's facial gestures, juror movement and

possible premature judgment, and the admission of evidence relating to the Florida business that was not named in the indictment as evidence that he did not receive a fair trial. Frazee's claim of juror misconduct centers on the alleged speculation of the jurors during the trial about the guilt of an unspecified defendant. Frazee, however, fails to cite any Sixth Circuit cases that support his claim that he did not receive a fair trial. Moreover, the district court cautioned the jury periodically, and none of the defendants moved for a mistrial or requested a hearing to determine the extent of the misconduct. As this court recognized in *United States v. Ashworth,* 836 F.2d 260 (6th Cir.1988):

> We must guard against the magnification on appeal of instances which were of little importance in their setting. The [defendants'] trial may not have been perfect, but it was fair. As this court observed in *United States v. Hajal,* 555 F.2d 558, 569 (6th Cir.1977), "we have yet to review a perfect jury trial."

*Id.* at 268 (Citations omitted). Any error which occurred at the trial was not of such a magnitude so as to deprive Frazee of a fair trial.

### F. SENTENCING GUIDELINES

 Appellants D. Clark, W. Clark, and Cook challenge various guideline adjustments which were applied to their base offense levels pursuant to the United States Sentencing Guidelines. D. Clark argues that the district court erred in calculating the amount of loss attributable to him. Section 2F1.1 of the Sentencing Guidelines provides for a means to determine the level of increase from the base offense level of 6 based on the amount of loss. U.S.S.G. § 2F1.1. In calculating the amount of loss, the district court considered the amount of unsecured debt, $1,900,000.00, which was listed on D. Clark's bankruptcy petition. D. Clark contends that this figure was highly inflated due to his mistaken fear that he would not receive a complete discharge in bankruptcy. D. Clark's court appointed attorney requested an opportunity to procure the testimony or record of each of the 340 unsecured creditors so that an accurate actual figure of the loss could be determined. Although the dis-

trict court denied his request, counsel for D. Clark was permitted to retain the services of a consultant and to subpoena a representative sample of 10% of the bankruptcy creditor's records at taxpayers' expense. Based on the subpoenaed records, the district court discounted the estimated loss by fifty percent—the amount requested by D. Clark.

The Sentencing Guidelines admonish that "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based on ... the average loss to each victim." U.S.S.G. § 2F1.1, comment. (n. 8). The district court appropriately weighed the arguments and determined that the fraud could not be lowered below the $800,000 threshold. The district court's valuation of the loss was not "outside the realm of permissible computations." *See United States v. Jackson,* 25 F.3d 327, 330 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 344, 130 L.Ed.2d 300 (1994). There was no clear error.

 W. Clark raises three arguments regarding his sentence. First, he contests the nine-level increase associated with losses in excess of $350,000.00. U.S.S.G. § 2F1.1(b)(1)(J). The district court arrived at this figure by taking the bankruptcy totals of codefendants D. Clark and Cook and dividing by four because W. Clark was one of four regular credit references for the sham businesses. W. Clark, on the other hand, argues that the losses should be determined from trial testimony by adding together all the amounts lost by victims in reliance on credit references supplied by W. Clark. Although W. Clark bears the "heavy burden of persuading this Court that the evaluation of the loss was not only inaccurate, but was outside the realm of permissible computations," *Jackson,* 25 F.3d at 330, he failed to cite any cases which suggest that the district court's calculations were impermissible. Dividing the bankruptcy totals by four was not arbitrary and the district court did not clearly err in charging W. Clark with twenty-five percent of the losses.

Next, W. Clark argues that the district court engaged in improper double counting in calculating his adjusted base offense level. The district court increased his base offense level by two levels for more than minimal planning, pursuant to § 2F1.1(b)(2), and by three levels for his role in the offense pursuant to § 3B1.1. Both *United States v. Romano,* 970 F.2d 164, 166–67 (6th Cir.1992), and *United States v. Chichy,* 1 F.3d 1501, 1505–07 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 620, 126 L.Ed.2d 584 (1993), specifically prohibit double penalties for the same conduct under these two provisions. However, effective November 1, 1993, the Sentencing Guidelines were amended as follows:

> Absent an instruction to the contrary, the adjustments from different guideline sections are applied cumulatively. For example, the adjustments from § 2F1.1(b)(2) and § 3B1.1 are applied cumulatively.

The Sentencing Commission's regulations have thus abrogated the holdings of *Romano* and *Chichy. See Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) ("commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"). As W. Clark was sentenced after the effective date of the amendment, his argument must fail.

Finally, W. Clark argues that the trial court did not give him sentencing credit for the ten month period he was released on a personal recognizance bond. However, it is settled law that this issue is not ripe for review until the Bureau of Prisons has ruled on a defendant's request for credit. *See United States v. Wilson,* 503 U.S. 329, 333, 112 S.Ct. 1351, 1353–54, 117 L.Ed.2d 593 (1992); *see also United States v. Becak,* 954 F.2d 386, 387–88 (6th Cir.), *cert. denied,* 504 U.S. 945, 112 S.Ct. 2286, 119 L.Ed.2d 211 (1992) ("We find no reason to depart from our prior precedent that requires physical incarceration to receive credit for presentence detention."). Thus, the district court correctly applied § 2F1.1(b)(2) and § 3B1.1.

Appellant Cook argues that his role in the conspiracy did not warrant a two-level increase pursuant to § 3B1.1. Section 3B1.1(c) provides that "[i]f the Defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by two levels." In addressing this issue, the district court determined that Cook rented a warehouse, operated a sham entity, causes losses to creditors exceeding $600,000, gave bogus credit references, and directed his wife to issue checks for some small portion of his purchases. Findings of fact related to sentencing are reviewed pursuant to the clearly erroneous standard. *United States v. Hamilton,* 929 F.2d 1126 (6th Cir.1991). The district court's characterization of Cook as a manager is not clearly erroneous. Based on the underlying factual findings, which were not clearly erroneous, Cook's enhancement pursuant to § 3B1.1 was warranted.

## G. PERJURED TESTIMONY BEFORE THE GRAND JURY

Frazee filed a *pro se* brief claiming that perjured testimony was presented to the grand jury. Based on *United States v. Mechanik,* 475 U.S. 66, 71–73, 106 S.Ct. 938, 942–43, 89 L.Ed.2d 50 (1986), we reject this claim on the grounds that any error by the prosecution before the grand jury is harmless because Frazee was subsequently convicted by the petit jury.

## IV

For the reasons stated above, the appellants' convictions and sentences are **AFFIRMED.**