grounds, we need not address his remaining arguments in any great detail.

With regard to his motion for severance, Vincent failed to demonstrate to the trial court "a strong showing of factually specific and compelling prejudice that [would] mislead or confuse the jury." *United States v. Cobleigh*, 75 F.3d 242, 248 (6th Cir. 1996) (quoting *United States v. Vinson*, 606 F.2d 149, 154 (6th Cir. 1979)) (internal quotation marks omitted). With regard to Vincent's claim that he was denied a speedy trial under the Sixth Amendment, none of the delay was caused by the government, there was no showing of bad faith or attempts by the government to seek a tactical advantage, and Vincent wholly failed to identify any specific way in which his defense was prejudiced as a result of the delay. *See Barker v. Wingo*, 407 U.S. 514 (1972). Accordingly, these assignments of error are without merit.

### CONCLUSION

For the reasons set forth in Parts II.A and II.B above, we **REVERSE** the district court's denial of Vincent's petition for writ of habeas corpus and **REMAND** to the district court with instructions to grant the petition for habeas corpus unless, within a reasonable time, the Commonwealth elects to afford Vincent a new trial.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0317P (6th Cir.)
File Name: 00a0317p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————



DEAN VINCENT,
    *Petitioner-Appellant,*

*v.*
           No. 98-6457

WILLIAM SEABOLD, Warden,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 97-00091—Joseph H. McKinley, Jr., District Judge.

Argued: August 10, 2000

Decided and Filed: September 13, 2000

Before: KEITH, COLE, and GILMAN, Circuit Judges.

———————

### COUNSEL

**ARGUED:** Oleh R. Tustaniwsky, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellant. Kent T. Young, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL APPELLATE DIVISION, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Oleh R. Tustaniwsky, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellant. Kent T. Young, OFFICE OF THE

ATTORNEY GENERAL, CRIMINAL APPELLATE DIVISION, Frankfort, Kentucky, for Appellee.

———————————

**OPINION**

———————————

R. GUY COLE, JR., Circuit Judge. In August 1985, a jury in Butler County, Kentucky, convicted Petitioner-Appellant Dean Vincent, along with co-defendants Leroy Kinser and Ronald Johnson, of first degree robbery, first degree burglary, and murder. It was established at trial that on June 15, 1983, the defendants broke into the home of Harold Hayes, beat him, bound him with duct tape, and robbed the home, leaving Hayes to die of blunt-force injuries to the head. All three defendants were sentenced to twenty years' imprisonment on both the robbery and the burglary convictions and life imprisonment on the murder convictions. After the Kentucky Supreme Court affirmed their convictions on direct appeal in *Kinser v. Commonwealth*, 741 S.W.2d 684 (Ky. 1987), Vincent and Johnson filed petitions for writs of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied each petition, but this Court reversed, concluding that Vincent and Johnson were entitled to habeas relief on the ground that their Sixth Amendment rights to confrontation had been violated. *See Vincent v. Parke*, 942 F.2d 989, 993 (6th Cir. 1991); *Johnson v. Parks*, 955 F.2d 44, 1992 WL 27027 (6th Cir. Feb. 14, 1992). We remanded the case for retrial, and on February 14, 1993, a jury found Vincent and Johnson guilty of first degree robbery, first degree burglary, and wanton murder. Vincent was sentenced to fifteen years' imprisonment on both the robbery and burglary convictions and life imprisonment on the murder conviction; the sentences were to run consecutively. The Kentucky Supreme Court affirmed Vincent's convictions but remanded the case to the Butler Circuit Court for resentencing because Kentucky law requires that the fifteen year sentences were to run concurrently with the life sentence. On April 22, 1997, Vincent filed a second petition for writ of habeas corpus, asserting, inter alia, that various testimony violated his Sixth Amendment rights under

Rules of Evidence. It has no evidentiary value. It cannot be considered as evidence. It has no credibility and should be totally disregarded by you in every shape, form and fashion. It should be put out of your minds as if the statement was never made.

The Kentucky Supreme Court found that the trial court's admonition cured any defect.

The magistrate judge determined, and the district court agreed, that the admission of Shephard's testimony did not amount to reversible error, relying in part on its earlier determination that Gaddie's testimony regarding Kinser's statements properly was admitted, and thus, Shephard's improper statements had but a very slight effect on the jury. As we have determined, however, the admission of Gaddie's testimony was improper and violated Vincent's Confrontation Clause rights. Because Shephard's testimony also was improper under *Bruton*, we hold that the errors, taken together, "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638. We find that the introduction of Kinser's statements through Gaddie's testimony, together with Johnson's statement through Shephard's testimony, rendered the government's case against Vincent significantly more persuasive. We, therefore, conditionally GRANT Vincent's petition for writ of habeas corpus, subject to the Commonwealth retrying him within a reasonable period of time.

### III. Severance and Speedy Trial

Vincent also argues on appeal that the trial court improperly denied his motion to sever his retrial from that of co-defendant Johnson's and that his Sixth Amendment right to a speedy trial was violated in that 16½ months elapsed from the time this Court ordered that Vincent be retried within a reasonable time in *Vincent v. Parke*, 942 F.2d 989 (6th Cir. 1991), until the start of Vincent's retrial. Neither of these assignments of error has any merit, and because we have granted Vincent's habeas petition on Confrontation Clause

two years after the date of the crime, she had a conversation with Ronnie Johnson. Shephard testified, "Well, he was my sister's boyfriend, so I asked him did he kill Harold Hayes and he said no, I didn't kill him, Leroy [Kinser] and Dean [Vincent] did."

Following this statement, the trial court held another in-chambers conference, allowing defense counsel to put its objections on record and move for a mistrial on the ground that the testimony violated *Bruton v. United States*, 391 U.S. 123 (1968), which held:

> A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice.

*Id.* at 132 (internal quotation marks and citation omitted).[4] The trial court overruled the motion and gave the jury a limiting instruction, finding that the error was not of a sufficient magnitude such that it had a likelihood of affecting the outcome of the trial. The trial court instructed:

> With regards to the testimony that the young lady gave just prior to lunch, that testimony was contrary to the Rules of Evidence. Ah, the question was proper, but the answer was given before the Court could stop her or anyone else could stop her, is in clear violation of our

---

[4] Johnson did not testify at the retrial, though Vincent did. Incidentally, it was a *Bruton* violation during the first trial that resulted in the grant of Vincent's habeas petition and retrial, which is the subject of the present habeas action. *See Vincent v. Parke*, 942 F.2d 989 (6th Cir. 1991). In the first trial, Detective Gaddie testified that Kinser's sister, Eva Mae Kinser, told Gaddie that Kinser told her that Vincent committed the murder. This Court held that Gaddie's testimony, hearsay within hearsay, violated the Vincent's Sixth Amendment confrontation rights and warranted a new trial. *See id.* at 992.

the Confrontation Clause. Upon recommendation of the magistrate judge, the district court denied Vincent's habeas petition. This appeal follows.

For the reasons that follow, we **REVERSE** the district court's judgment and **REMAND** to the district court with instructions to grant the petition for habeas corpus unless, within a reasonable time, the Commonwealth elects to afford Vincent a new trial.

## DISCUSSION

### I. Standard of Review

We review a district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. *See Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Because Vincent filed his habeas petition on April 22, 1997, review of the state court's decision is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997). As amended, 28 U.S.C. § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 120 S. Ct. 1495 (2000), the Supreme Court recently explained that an

"unreasonable application" of clearly established federal law established by Supreme Court precedent occurs if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *See id.* at 1520. A state court decision can be "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result. *See Machacek v. Hofbauer*, 213 F.3d 947, 952-53 (6th Cir. May 26, 2000) (citing *Williams*, 120 S. Ct. at 1519).

## II. Confrontation Clause

### A.

Vincent first asserts that the trial court violated his Sixth Amendment right to confrontation when it allowed Detective Gaddie of the Kentucky State Police to testify as to post-arrest, custodial hearsay statements made by former co-defendant Kinser.[1] Prior to the retrial, Vincent filed a motion to exclude Kinser's confession as violative of the Confrontation Clause, but the trial court denied Vincent's motion, holding that the confession would be admissible in the event that Kinser refused to testify. The trial court relied upon *Taylor v. Commonwealth*, 821 S.W.2d 72 (Ky. 1991) (holding that a co-defendant's confession was admissible under exception to hearsay rule for statement against penal interest by unavailable declarant, notwithstanding the fact that the confession implicated the defendant, because the co-defendant admitted to having been an active participant in the crime), *cert. denied*, 502 U.S. 1100 (1992), *overruled on other grounds*, *St. Clair v. Roark*, 10 S.W.3d 482 (Ky. 1999)).

Before Kinser was called to the stand, the court conducted an in-chambers conference with all counsel present to

---

[1] Kinser, who was convicted along with Vincent and Johnson in the first trial, was not on retrial.

indistinguishable from those in *Williamson*, reached a conclusion opposite to that reached by *Williamson*; we think it also was an "unreasonable application" of the governing legal standard established in *Williamson*. *See* 28 U.S.C. § 2254(d); *see also Williams*, 120 S. Ct. at 1519 (explaining that "contrary to" and "unreasonable application" do in fact have independent meanings). Despite the fact that the admission of Gaddie's testimony clearly violated Vincent's Sixth Amendment confrontation rights, we recognize that we may grant Vincent's habeas petition only if we determine that the error was not harmless. *See Wright*, 497 U.S. at 823-24; *Hill v. Brigano*, 199 F.3d 833, 846-47 (6th Cir. 1999). To make such a determination, we must decide that the trial court's error "had substantial and injurious effect or influence in determining the jury's verdict." *See Nevers*, 169 F.3d at 371 (holding that the *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), standard continues to apply on habeas review even after the amendments to AEDPA). Gaddie's testimony, alone, might not have had a "substantial and injurious effect" on the outcome of the case, given the other evidence against Vincent established at trial. However, as we discuss below in Part B, Gaddie's testimony was not the only improper testimony adduced at Vincent's trial.

### B.

Vincent asserts that the trial court also violated his Sixth Amendment right to confrontation when it allowed Tammy Seabolt Shephard to testify that a year or two following the crime, Defendant Johnson told her that he had not murdered Hayes, but that it was Vincent and Kinser. Shephard was the eighteenth witness called in the Commonwealth's case in chief. Before Shephard testified, the trial court held an in-chambers conference to determine what the Commonwealth thought the substance of her testimony would be. The Commonwealth stated that based on Shephard's rebuttal statements made during the first trial, it anticipated that she would testify that "Johnson told her that they were all there and they killed Harold Hayes." The court then allowed Shephard to testify, and she stated that approximately one or

Thus, both *Williamson* and *Lilly* instruct that the statements made by Kinser are presumptively unreliable, and to rebut this presumption, we must evaluate the "indicia of reliability" associated with each individual remark or declaration made by Kinser. In so doing, we must bear in mind that it is highly unlikely that Kinser's post-arrest, custodial statements, which clearly shift the brunt of the blame to defendants Vincent and Johnson, effectively can be rebutted. *See id.*

Here, Gaddie's testimony reveals that while Kinser's overall confession was self-inculpatory insofar as it placed him at the scene of the crime as a participant, many of the statements were not individually self-inculpatory, as is required under *Williamson*, and in fact were wholly self-exculpatory, implicating both Vincent and Johnson. Kinser told Gaddie:

[Vincent] hit [Hayes] with a billy club. . . . Ronnie Johnson was over there by Mr. Hayes. He had ah, kicked him . . . . [I] at the time, was back in the kitchen, around the table. [I] was lookin' around to–to see what [I] could find . . . . Deano [Vincent] came out of the back room and he hollered to Mr. Hayes, "where is it at" and Mr. Hayes said there wasn't any–"there's not any more" and Deano went over there and hit him three or four more time with that billy club. . . . Ronnie [Johnson] put the tape on Mr. Hayes, on his eyes and on his mouth.

The trial court held that Kinser's statements were self-inculpatory in that they show that Kinser was an active and willing participant in the crime and made no effort to prevent or diminish the severity of the blows Vincent and Johnson gave to Hayes. The magistrate judge and, in turn, the district court, agreed. We, however, disagree. All of these statements attempt to distance Kinser from the murder and minimize his participation in the crime; Kinser clearly was attempting to shift the blame away from himself and onto Vincent and Johnson. Finding otherwise was "contrary to" the clearly established federal law set forth in *Williamson* in that the trial court, faced with facts materially

determine if Kinser would testify voluntarily. As Kinser had been tried and convicted and his sentence had been affirmed, it was determined that Kinser possessed no Fifth Amendment right that would allow him to refuse to testify. The court decided that it would allow the Commonwealth to call Kinser to the stand. Once on the stand, Kinser refused to take the oath and would not testify, despite the fact that the court advised him he possessed no Fifth Amendment right against self-incrimination and that he would be held in contempt. The court recessed for the day, and the next morning appointed counsel for Kinser, confirming once again that according to the federal court clerk and the Kentucky Supreme Court clerk, Kinser could invoke no right under the Fifth Amendment that would enable him to refuse to testify. After Kinser again refused to testify, the court ordered him in contempt and held him to be an "unavailable witness" under Ky. R. Evid. 804(a) (recognizing the unavailability of a witness in situation where declarant "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so").

Thereafter, the Commonwealth announced its intention to call Detective Gaddie to the stand to testify as to the post-arrest, custodial statements made by Kinser. Before allowing Gaddie to introduce Kinser's confession, the court held another in-chambers conference to discuss Gaddie's intended testimony concerning the substance of Kinser's confession and the taking of his statements. Gaddie explained that Kinser had signed a properly executed *Miranda* rights form and that Kinser's attorney, Gary Logsdon, had advised him to give a statement. The court also reviewed the transcript from a 1984 suppression hearing in which Logsdon testified that he and Kinser had discussed at length Kinser's option of making a statement. Logsdon testified that Kinser "sincerely desired to make a statement," understood his *Miranda* rights, was not under duress or compulsion, and understood that no inducements or promises had been made by the police or prosecutor. Defense counsel argued that Kinser's confession was not a statement against penal interest under hearsay exception Ky. R. Evid. 804(b)(3) because it sought to

inculpate Vincent and Johnson while minimizing Kinser's own participation in the crime. However, the court determined that Kinser's confession was sufficiently self-inculpatory insofar as he indicated that he was an active and willing participant in the crime and made no effort to prevent or diminish the severity of the blows Vincent and Johnson gave to Hayes. The court then allowed Gaddie to testify as to Kinser's confession, stating, "the presumption of unreliability has been overcome by the evidence that we've heard and . . . the confession, to the extent that it is relevant to the matters charged, is admissible as evidence."

Detective Gaddie then testified that on August 29, 1983, Kinser made a statement to Gaddie at the State Police Post in Bowling Green, Kentucky. Kinser told Gaddie the following: He, Vincent, and Johnson broke into the home of Harold Hayes, finding Hayes asleep on the couch. Vincent approached Hayes and struck him twice in the head with a billy club and began to search the house for money. Johnson kicked Hayes and then began to use duct tape to constrain him. Vincent returned to the room and began interrogating Hayes about the whereabouts of some money that defendants believed was in the house. Vincent again struck Hayes with the club three or four more times before continuing his search. All the while, Kinser was searching the house for the money. Vincent then yelled to the others that "he'd found it" and returned to the room with a sack of money. Johnson then taped shut Hayes's eyes and mouth, and the three defendants left the house.[2] Vincent asserts that Gaddie's testimony violated his Sixth Amendment right to confrontation. The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him." *Idaho v. Wright*, 497 U.S. 805, 813 (1990) (citing U.S. Const. amend. VI). In *Idaho v. Wright*, the Supreme Court recognized:

---

[2]It was established at trial that although Hayes died of blunt force injuries to the head, he would have died of suffocation resulting from his broken nose and the swelling of his mouth and tongue caused by the duct tape.

defendant. Rather, it simply means that the Government must satisfy the second prong of the *Ohio v. Roberts*, 448 U.S. 56 (1980), test in order to introduce such statements." *Id.* (internal quotation marks and alterations omitted). *Lilly* also recognized:

Nothing in our prior opinions, however, suggests that appellate courts should defer to lower courts' determinations regarding whether a hearsay statement has particularized guarantees of trustworthiness. To the contrary, those opinions indicate that we have assumed, as with other fact-intensive, mixed questions of constitutional law, that independent review is necessary to maintain control of, and to clarify, the legal principles governing the factual circumstances necessary to satisfy the protections of the Bill of Rights.

. . . .

The Commonwealth correctly notes that the presumption of unreliability that attaches to codefendants' confessions may be rebutted. We have held, in fact, that any inherent unreliability that accompanies co-conspirator statements made during the course and in furtherance of the conspiracy is per se rebutted by the circumstances giving rise to the long history of admitting such statements. Nonetheless, the historical underpinnings of the Confrontation Clause and the sweep of our prior confrontation cases offer one cogent reminder: It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old ex parte affidavit practice--that is, when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.

*Id.* at 136-37 (internal quotation marks, citations, and alterations omitted).

in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all the surrounding circumstances." *Id.* at 603-04 (quoting FED. R. EVID. 804(b)(3)) (footnote omitted).

Because the declarant in *Williamson* implicated the defendant while in police custody and after already having confessed to the crime, the Court concluded that naming the defendant did little to implicate the declarant any further and was probably an effort to secure a lesser punishment through cooperation. *See id.* at 604 (opinion of O'Connor, J., in which Scalia, J. joined); *id.* at 607-08 (opinion of Ginsburg, J., in which Blackmun, Stevens, and Souter, J.J., joined). *See also United States v. Boyce*, 849 F.2d 833, 836 (3d Cir. 1988) (holding that a statement given in custody was not reliable because circumstances indicated that it may have been "motivated by a desire to curry favor"). However, because the lower court failed to conduct the appropriate analysis, breaking down each remark sentence by sentence, *Williamson* remanded the case without reaching the issue of whether the Confrontation Clause rendered the statements inadmissible, expressly declining to determine whether the hearsay exception for statements against interest is "firmly rooted" for Confrontation Clause purposes. *See id.* at 605.

Although the Sixth Circuit has held that the hearsay exception for statements against penal interest constitutes a firmly rooted exception for purposes of Confrontation Clause analysis, *see Gilliam v. Mitchell*, 179 F.3d 990, 994 (6th Cir. 1999); *Neuman v. Rivers*, 125 F.3d 315, 319-320 (6th Cir. 1997), the Supreme Court recently ended a circuit split by holding that "accomplices' confessions that inculpate a criminal defendant are *not* within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Lilly v. Virginia*, 527 U.S. 116, 134 (1999) (emphasis added). *Lilly* noted that, "[t]his, of course, does not mean . . . that the Confrontation Clause imposes a blanket ban on the government's use of nontestifying accomplice statements that incriminate a

From the earliest days of our Confrontation Clause jurisprudence, we have consistently held that the Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause.

. . . .

[S]tatements admitted under a "firmly rooted" hearsay exception are so trustworthy that adversarial testing would add little to their reliability.

*Idaho v. Wright*, 497 U.S. at 813, 821 (internal citations omitted). The Court held that if the hearsay statement falls within a firmly rooted exception, it does not run afoul of the Confrontation Clause. *Id.* Those statements that do not fall within a traditional exception, but fall within the residual, or catch-all, hearsay exception, also may be admitted without implicating the Confrontation Clause if the proponent shows that "particularized guarantees of trustworthiness" make the statements so trustworthy that cross-examination of the hearsay declarant would add little to the reliability of the statements. *Id.* *See also Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980) (holding that hearsay statements do not violate the Confrontation Clause when the prosecution shows that the declarant is unavailable and that the statement bears adequate "indicia of reliability") (citing *Barber v. Page*, 390 U.S. 719 (1968) (holding that the government must show the unavailability of a witness before it may introduce less reliable accounts of witness's statements at trial)).

Rule 804 of the Federal Rule of Evidence[3] sets forth certain exceptions to the hearsay rule that apply when the declarant is an unavailable witness. Rule 804 states that, "[u]navailability as a witness includes situations in which the declarant . . . persists in refusing to testify concerning the

---

[3]Rule 804 of the Kentucky Rules of Evidence mirrors the language of the Fed. R. Evid. 804.

subject matter of the declarant's statement despite an order of the court to do so . . . ." FED. R. EVID. 804(a)(2). The Rule provides that if the declarant is in fact unavailable as a witness, statements against interest are not excluded by the hearsay rule. FED. R. EVID. 804(b). A "statement against interest" is defined as follows:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

FED. R. EVID. 804(b)(3). Here, neither party challenges the trial court's determination that Kinser was in fact an unavailable witness under Rule 804. Vincent argues, however, that Gaddie's testimony does not fall within the hearsay exception because Kinser's confession was not "a statement against interest" in that Kinser essentially sought to distance himself from the murder.

In *Williamson v. United States*, 512 U.S. 594 (1994), the Supreme Court defined the scope of Rule 804(b)(3) when the declarant's statements both subject the declarant to criminal liability and inculpate the defendant. In *Williamson*, the prosecution sought to admit hearsay statements made by the declarant, who had been arrested after police found large amounts of cocaine in the car he was driving and who made custodial statements to a DEA agent that indicated that the cocaine belonged to the defendant. *See id.* at 596-97. *Williamson* first considered the question of what is meant by a "statement" in light of the principle that "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend

not to make self-inculpatory statements unless they believe them to be true." *Id.* at 599. Reasoning that this principle mandates a narrow definition of "statement" as "a single declaration or remark," rather than a broad definition as "a report or narrative," the Court held:

In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

*Id.* at 599, 600-01; *see also United States v. Jinadu*, 98 F.3d 239, 246 (6th Cir. 1996) (holding that a court must evaluate the admissibility of each declaration or remark within the confession when determining whether those statements are admissible under the hearsay exception for statements against penal interest); *United States v. Canan*, 48 F.3d 954 (6th Cir. 1995) ("[W]hen ruling upon a narrative's admissibility under [Rule 804(b)(3)], a court must break it down and determine the separate admissibility of each single declaration or remark.") (internal quotation marks and citation omitted). *Williamson* went on to explain:

There are many circumstances in which Rule 804(b)(3) does allow the admission of statements that inculpate a criminal defendant. Even the confessions of arrested accomplices may be admissible *if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor*.

*Id.* at 603 (emphasis added). Thus, the proper Rule 804(b)(3) analysis under *Williamson* requires examining the circumstances in which the statements are made in order to determine whether they are self-inculpatory or self-serving. The proper inquiry is "whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person