UNITED STATES of America,
Plaintiff,

v.

Victor David PINEDA, Defendant.

No. 5:00CR30054.

United States District Court,
W.D. Virginia
at Harrisonburg.

Dec. 13, 2001.

Hugh David O'Donnell, Harrisonburg, PA, Denise Yvette Lunsford, Charlottesville, VA, Steven Frey, Jonesboro, GA, for Victor David Pineda.

Jean Barrett Hudson, Bruce A. Pagel, U.S. Atty's Office, Charlottesville, VA, for U.S.

### MEMORANDUM OPINION

TURK, District Judge.

A Harrisonburg jury convicted the Defendant, Victor David Pineda, of conspiracy to distribute methamphetamine in viola-

tion of 21 U.S.C. § 841 (2000). He now challenges his conviction on the grounds that the Court erred in admitting certain testimony in violation of his Sixth Amendment right to confront the witnesses against him. He asks for a ruling that the court improperly admitted the testimony. Because both motion has merit, the Court will set aside the jury verdict and order a new trial, subject to the defendant's right to move the Court for a judgment of acquittal.

On February 6, 2001, a grand jury indicted Defendant Victor David Pineda for conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841 (2000). He pled not guilty. After a continuance the Court held a jury trial in Harrisonburg on August 24, 2001. The United States' most important witness by far was an alleged co-conspirator named Jose Chavez, whom a different jury had already convicted and who had put the DEA on the trail of Mr. Pineda. After Mr. Chavez's arrest, DEA Agent Ken Rosel interviewed him. According to Agent Rosel, Mr. Chavez explained that one "Victor" hired him to carry drugs of some type from Atlanta to Harrisonburg. During the interview, Mr. Chavez said that Victor helped him load drugs onto a pickup truck that belonged to a relative of Victor, and that Victor promised to pay Mr. Chavez $1000 for hauling the packages. Mr. Chavez was to deliver the packages to one "Raul" at the Valley View Mall. The government already had other evidence linking Raul to the drug conspiracy. Although Mr. Chavez was unable to identify Victor's last name, he identified a picture of the defendant during the interview. He also described Victor's physical features to Agent Rosel, and those features matched those of the Defendant.

Naturally, the United States was anxious to call Mr. Chavez as a witness at Mr. Pineda's trial. Mr. Chavez would presumably provide the most direct link between the methamphetamine smuggling and the defendant. However, it was not to be. Mr. Chavez, so talkative during his interview, was as timid as a turtle when testifying. He kept telling the court that he had nothing to say, at the same time steadfastly denying that fear of Mr. Pineda played any role in his silence. "I just can't testify," he said. "It's not because I'm afraid or anything like that." *Tr.* at 9. The Court sentenced Mr. Chavez to an additional six months in jail for contempt of court. The Government then proffered Agent Rosel's testimony concerning the interview. Mr. Pineda objected on the grounds that the evidence was inadmissible hearsay and that its admission violated his Confrontation Clause rights. The Court overruled the objection and admitted the testimony. The jury then convicted Mr. Pineda of conspiracy to distribute methamphetamine.

Mr. Pineda now asks for a post-trial ruling that the admission of Agent Rosel's hearsay testimony was improper. If the Court finds that it was, he requests a new trial or a judgment of acquittal.

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him." American courts have long recognized that the Confrontation Clause is implicated when a judge admits hearsay testimony. *See, e.g., Mattox v. United States,* 156 U.S. 237, 242–44, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (admission of former testimony of deceased declarant does not violate Confrontation Clause). Hearsay testimony involves a witness reporting to a jury what an out-of-court declarant says, in order to prove the truth of the declarant's statement. *See F.R.E.* 801(c). When the declarant is not available for cross examination, arguably

the defendant cannot avail himself of the right to cross-examine the declarant, who is in essence a witness making a statement against him.

However, courts have also realized that when Representative James Madison introduced the Sixth Amendment during the First Congress, he did not intend to abrogate centuries of English hearsay law (now codified in large part in the Federal Rules of Evidence). *See Mattox*, 156 U.S. at 243. Mr. Justice Brown stated that "[m]any of [the Constututution's] provisions in the nature of a Bill of Rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions obviously were intended to be respected." *Mattox*, 156 U.S. at 243. Thus, in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court articulated a two-prong test to determine what types of otherwise-admissible hearsay testimony violate the Confrontation Clause, and what types fall under the "exceptions" to which Mr. Justice Brown referred.

First, the Court found that hearsay testimony was admissible, consistent with the Confrontation Clause, when it fell within a hearsay exception "resting upon such solid foundations that admission of virtually any evidence within [the exception] comports with the 'substance of the constitutional protection'." *Id.* at 66 (quoting *Mattox*,

156 U.S. at 244). Satisfaction of the criteria for such a "firmly rooted" exception to the hearsay rule (as it came to be known) allows admission of the evidence. *Ohio*, 448 U.S. at 66. Second, hearsay otherwise admissible under a non-firmly rooted exception is admissible under the Confrontation Clause if it bears adequate "indicia of reliability." *Id.*

The statements of the declarant in this case, Mr. Chavez, supposedly fall under the hearsay exception for statements against penal interest. *See F.R.E.* 804(b)(3).[1] The Supreme Court addressed the relationship between the against-penal-interest exception and the Confrontation Clause in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). *Lilly* involved a three-person Montgomery County crime rampage that culminated in the murder of a VPI student. After their arrest, one of the three (Mark Baker) told police that another of the three (Ben Lilly) had pulled the trigger on the gun. At Lilly's trial, Baker invoked his privilege against self-incrimination. The Government then produced the investigator who interrogated Baker; the investigator stated what Baker had told him. The jury convicted Lilly.

A unanimous Supreme Court reversed Lilly's conviction, but the justices could not agree on why. Four justices found that the against-penal-interest exception to the

1. Normally a Court would undergo an evidentiary analysis before reaching the Constitutional questionthat is, a court would determine whether the statements were admissible under the Rules of Evidence before determining whether their admission would violate the Confrontation Clause. The Supreme Court limited the scope of *F.R.E.* 804(b)(3) in *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). There the Justices decided that a trial judge must edit the statements against penal interest so that only those portions of the narrative that actually are against penal interest are admit-

ted, rather than admitting a declarant's entire narrative including portions not self-inculpatory. Probably some of Mr. Chavez's statements are inadmissible under the Rules without considering the Confrontation Clause. However, neither party has cited *Williamson* or made any reference to an argument based on the scope of Rule 804(b)(3); thus, this Court will proceed directly to the constitutional issue. *Cf. United States v. Castelan*, 219 F.3d 690, 694 (7th Cir.2000) (declining to address evidentiary argument *sua sponte* and proceeding directly to Confrontation Clause analysis).

hearsay rule was not "firmly rooted" for Confrontation Clause analysis, and that Baker's statements (which were given in the course of a law enforcement custodial interrogation) did not possess sufficient indicia of reliability to survive constitutional scrutiny. Three justices found that the against-penal-interest exception was "firmly rooted" when the declarant made the statements in a context other than custodial interrogation, and perhaps also when the declarant's statements equally inculpate both himself and the defendant. They wanted to remand the case for a Virginia court to pass on the second prong of the *Ohio v. Roberts* test, the search for indicia of reliability. Justice Scalia, writing separately, was cryptic: He stated that the case constituted a "paradigmatic Confrontation Clause violation," making any further exploration of the issue irrelevant. *Id.* at 143 (Scalia, J., concurring in the judgment). Finally, Justice Thomas repeated his position that the hearsay rule and the Confrontation Clause have nothing to do with one another. *Id.* at 143.

Although the Fourth Circuit has not yet interpreted the fractured holding of *Lilly*, other circuits have generally followed it (even when their pre-*Lilly* jurisprudence suggested a different result). For instance, the Court has not been able to locate any post-*Lilly* decisions of a federal court which hold that the statement-against-interest exception to the hearsay rule is "firmly rooted," but found several which stated that is was not. *See United States v. Westmoreland*, 240 F.3d 618 (7th Cir.2001)(penal interest exception not firmly rooted); *Vincent v. Seabold*, 226 F.3d 681, 688 (6th Cir.2000) (same); *United States v. Gomez*, 191 F.3d 1214, 1221–22 (10th Cir.1999) (penal interest exception not firmly rooted when statements given during custodial interrogation, but might be in other contexts). *Cf. United States v. Taylor*, 1999 WL 617896 (4th Cir. Aug. 16, 1999) (declining to determine status of ex-

ception in this Circuit). One judge in the neighboring Southern District of West Virginia has also held that the against-penal-interest exception is not a firmly rooted one, even when the declarant's statements implicate both the declarant and the defendant. *See United States v. Gibson*, 84 F.Supp.2d 784, 788 (S.D.W.Va.2000). Thus, the Court feels itself on solid ground in this case when it holds that Chavez's statements do not come under a firmly rooted exception to the hearsay rule.

The statements are still admissible, however, if they bear particularized guarantees of trustworthiness. This is a slightly more nuanced analysis. The United States takes the position that *Lilly* is distinguishable because the *Lilly* defendant attempted to *shift* the blame (i.e., he did it, not me) but Mr. Chavez attempted to *spread* the blame (i.e., we did it together). Thus, says the United States, the Chavez statements are reliable but the *Lilly* ones were not. Such a position is similar to that of the three-justice opinion in *Lilly*. *Cf. Lilly*, 527 U.S. at 146 (Rhenquist, C.J., concurring in judgment) (confession that spreads blame might fall under firmly rooted exception). Nevertheless, the plurality opinion in *Lilly*, which excludes statements that "shift *or* spread" blame, does not support the distinction that the United States would make. *Lilly*, 527 U.S. at 133 (Stevens, J., plurality opinion) (emphasis supplied). Indeed, Chief Justice Rhenquist's opinion recognized this. *See Lilly*, 527 U.S. at 145 (Rhenquist, C.J., concurring in judgment) (referring to plurality's "complete ban on the government's use of accomplice statements that implicate a co-defendant"). *Cf. Castelan*, 219 F.3d at 695 (rejecting distinction).

The confusion over statements which spread blame vs. statements which shift blame occurs against the backdrop of a presumption. In *Lee v. Illinois*, 476 U.S.

530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the Supreme Court found that "when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect." In *Lilly,* the plurality applied the *Lee* presumption to Confrontation Clause analysis:

> It is *highly unlikely* that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns [of the abuses under old English law]—that is, when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.

*Lilly,* 527 U.S. at 137 (Stevens, J., plurality opinion) (emphasis supplied). Post-*Lilly* cases follow this language when the statements are part of a custodial interrogation. *See Gomez,* 191 F.3d at 1222; *Westmoreland,* 240 F.3d at 626; *Vincent,* 226 F.3d at 688.

The presumption seems to apply to this case. Mr. Chavez made his statements during a government-sponsored custodial interrogation, during which it was in his interests to made the interrogating agents as happy as possible. One way of making them happy was to provide the name of a person in the drug distribution chain who was more important to the operation than he was. He did so. *Cf. Williamson v. United States,* 512 U.S. 594, 604, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) ("A reasonable person [in a custodial interrogation] might even think that implicating someone else would decrease his practical exposure to criminal liability, at least so far as sentencing goes. Small fish in a big conspiracy often get shorter sentences than people who are running the whole show...."). Mr. Chavez had incentive to please, and his statements were never subject to adversarial testing.

The United States articulates only one factor to rebut the presumption: she states that other evidence corroborates Mr. Chavez's statements. However, it is clear both from the *Lilly* plurality and from earlier cases that the government may not "bootstrap" otherwise unreliable hearsay up to the level of admissible hearsay simply by relying on other evidence. *Lilly,* 527 U.S. at 137 (Stevens, J., plurality opinion) (no "bootstrapping" allowed); *Idaho,* 497 U.S. at 822 (same). Rather, the reliability of the statement must be apparent from the "totality of the circumstances" that surround the making of the statement—the person to whom it was given, the time, and the motive (if any) of the declarant to dissimulate. *Idaho,* 497 U.S. at 820. These factors counsel against admissibility here.

■ In addition, there is one additional factor here that mitigates against a finding of reliability: Mr. Chavez never memorialized his statements in a signed writing. Agent Rosel recorded them in his notes, but Mr. Chavez never ratified them with his signature. Thus, in this case there is the additional danger that Agent Rosel did not correctly record the statements as Mr. Chavez gave them, and Mr. Chavez never had the opportunity to correct errors in Agent Rosel's notes. In this way, Mr. Chavez's statements are even less reliable than the declarant's statements in *Lilly,* which the jury heard directly from a tape recording of the declarant's interview. *Cf. Lilly,* 527 U.S. at 122.

Considering the presumption and the totality of the circumstances, this Court cannot say that Chavez's statements possessed adequate indicia of reliability such that "adversarial testing would add little to their reliability." *Idaho,* 497 U.S. at 821.

Thus, the Court should not have admitted them.[2]

■■■ The last remaining question is whether the admission of the statements was harmless error. A Confrontation Clause error should not vacate a conviction if it is harmless beyond a reasonable doubt. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). When considering the gravity of the harm, a court considers the importance of the testimony, whether it was cumulative, the presence of absence of corroborating evidence, and the overall strength of the case. *Id.* In this case, the Court is unable to say that the error was harmless. Mr. Chavez (through Agent Rosel) was the single most important Government witness. He supplied direct and unequivocal evidence linking Mr. Pineda to the conspiracy, and evidence that was not cumulative. Without Mr. Chavez, the Government's case is considerably weaker. The Court's error most likely tainted the verdict. It follows, then that Mr. Pineda's conviction must be set aside.

There remains the practical question what effect the decision that the evidence is improper has on future proceedings. Mr. Pineda has renewed his motion for judgment as a matter of law. It is unclear to the Court at this point whether his motion has merit, or if the evidence without Agent's Rosel's hearsay testimony would support a jury verdict. If it would, a new trial is the proper remedy and not a judgment of acquittal. As a practical matter the United States will probably appeal

this opinion under 18 U.S.C. § 3731 (2000), whether the document that she appeals is an order granting a new trial or a judgment of acquittal. In any case, the best thing to do seems to be to allow the parties to brief and argue the question[3]; when the Court has decided it, the United States may file its notice of appeal. An appropriate order will enter this day.

**2.** Of course, if Mr. Pineda had intimidated Mr. Chavez or otherwise procured his unavailability as a witness, the statement would be admissible both under *F.R.E.* 804(b)(6) and the Confrontation Clause. *See United States v. Dhinsa,* 243 F.3d 635, 651–52 (2nd Cir. 2001) (defendant who procures unavailability of witness waives Confrontation Clause rights). Mr. Chavez maintained that fear of Mr. Pineda had nothing to do with his deci-

sion not to testify. This Court specifically finds that Mr. Chavez's statement is not credible. However, the record at this date is silent about who, exactly, procured Mr. Chavez's availability. Thus, *Dhinsa* is not applicable at the present time.

**3.** The court will allow the Defendant's attorney to appear by telephone in the courtroom if that is most convenient for him.