*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0289p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EMMETT JONES,

*Petitioner-Appellant,*

*v.*

No. 03-1665

>

DAVID JAMROG, Warden,

*Resondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-73163—Nancy G. Edmunds, District Judge.

Submitted: February 3, 2005

Decided and Filed: July 5, 2005

Before: SILER, COLE, and CLAY, Circuit Judges.

---

### COUNSEL

**ON BRIEF:** Raina I. Korbakis, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Emmett A. Jones, Carson City, Michigan, pro se.

CLAY, J., delivered the opinion of the court, in which COLE, J., joined. SILER, J. (pp. 9-10), delivered a separate dissenting opinion.

---

### OPINION

---

CLAY, Circuit Judge. Emmett Jones appeals the denial of his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. Jones sought to represent himself at his state criminal trial. He explained that he wanted to do so in order to have access to files the state would turn over only to his lawyer. The state courts interpreted this as an involuntary waiver of the right to counsel and denied his request. In our view, this conclusion rests on an unreasonable application of clearly established federal law as determined by the Supreme Court; we therefore reverse the judgment of the district court.

## I.

In 1999, Jones stood trial in Michigan for felonious assault.  MICH. COMP. LAWS § 750.82 (1999).  There were other charges pending against him at the time and in each case Jones asked for access to police reports and other materials the state had turned over to his lawyer but refused to give to him.  The state had a policy permitting the release of these materials to defendants' lawyers, provided the materials remained in the lawyers' custody at all times.[1]  Over Jones's objections, the original trial judge in Jones's felonious assault case sustained the policy's application to him; the judge also prohibited Jones from speaking in court.  The state did not object to Jones meeting with his lawyer to review the materials,  but Jones wanted to spend more time reviewing the materials relevant to his case than his lawyer was willing to provide.  He resolved this quandary by deciding to represent himself in his pending cases.  His decision to proceed *pro se* arose in the context of his lawyer's motion to withdraw as his counsel.

At a hearing on the motion before a second judge, the judge asked Jones whether he was dissatisfied with his lawyer's services.  Jones responded by saying, "my request to represent myself was based on other matters, which I could explain to the Court . . . ."  Jones explained he had "no other choice . . . other than self-representation" because of the court's order that he not speak in court and because of its ruling that "Defense Counsel was not to provide [him] with any copies of discovery materials or police reports or other court documents."  In particular, Jones continued, "for a defendant to be able to [ ] assist in his defense he must be able to make informed decisions.  If I am denied copies of police reports and other basic discovery materials I cannot make informed decision [sic].  My attorney has refused to provide me copies of police reports and other documents related to my case.  Counsel explains his refusal is based on a local rule."  Jones then said: "If the Court insist [sic] upon . . . upholding the local rule I have no choice but to overcome that by representing myself."

Jones's remarks to the judge were not brief; he expounded on the constitutional right to represent oneself, citing, we imagine (the transcript is unclear), *Faretta v. California*,[2] for the proposition that, in Jones's words, "counsel suffers no penalty if he loses the case . . . being that I'm the one that suffers the penalty that the decision is to be made in this case are left are mine.  And, because the decisions are mine I cannot make informed decisions, I cannot prepare for my defense, [ ] without this discovery material."  When asked by the judge, Jones's lawyer confirmed his client's motivations; the lawyer explained, "if the only way he can get copies of the police reports and the other discovery material that's come along with the police reports is to be represented [sic] himself then that's what he wishes to do . . . ."  Ultimately the judge referred the motion to withdraw to a third judge, who was to preside at Jones's felonious assault trial.  Nevertheless, the hearing judge did comment on Jones's request.  Citing Michigan's standard for waiving the right to counsel, the judge ventured that Jones's request was not unequivocal, as the cases of the Michigan Supreme Court require, "because you're saying, Well, I have no choice but to do this because I disagree with this other ruling [i.e., the original judge's ruling that Jones would not be exempted from the state's policy regarding discovery material]."  The judge also noted: ". . . it seems to me that in a word your problems are not with [counsel] but your problems are with his compliance with some rules that he didn't create."

---

[1] We cannot discern from the record supplied to us precisely what the policy says, or whether it even exists in writing.  It may not extend to all defendants but only to those incarcerated before trial.  Even the prosecutor was uncertain.  When asked about the policy by the court, he responded "Uh, to be honest with you, Your Honor, I don't know."  What is clear is that the state did not permit Jones to access certain materials except when in the presence of his lawyer, who retained custody over the materials at all times.

[2] 422 U.S. 806 (1975).

When the motion to withdraw came before the trial judge, Jones again explained his position: "Sir, I – I need to be able to assist my attorney. I need to be able to answer his questions. I need to be able to make informed decisions. And, when I don't have access to this material I ca– I can neither study it or make those informed decisions, which makes me give my attorney incompetent answers, answers which are not informed. And, so I'm not – I'm – you know, I'm not capable of assisting in my own defense." The judge asked Jones's lawyer for his thoughts on the matter and he argued that the state's discovery policy was at odds with *Brady v. Maryland*, 373 U.S. 83 (1963), because it had the effect of limiting a defendant's access to materials that might be critical to his defense. According to Jones's lawyer, the effect of the discovery policy was most severe in a case like Jones's because he was incarcerated. The lawyer suggested he could not visit the jail frequently enough for his client to have a sufficient opportunity to review the materials. Consequently, the only way for Jones to circumvent this obstacle to preparing his defense was to represent himself. The judge was unmoved by these arguments; he seemed more concerned with whether Jones had been afforded at least some opportunity to review the materials and to discuss them with his lawyer. Because the lawyer had visited Jones at least a few times, the judge was satisfied.

There was then an exchange between the court and Jones regarding whether Jones's request was unequivocal:

THE COURT:          . . . do you think – let me – let me ask you this: Are you – are you suggesting that your request to represent yourself is unequivocal?

JONES:          Um, if the – yeah. Yes, it will be if the, you know, if the Court – If I'm – I'm – if I'm gonna be denied this material I would make up my request as unequivocal. You know, there is no other way that I could be of – I feel that I be assured of a fair trial, other than for me to represent myself. This is for me to get this material. . . .

THE COURT:          But, – but you tell me in the same breath that if you had the police reports and copies of all the stuff you want you'd want Mr. Getting [Jones's lawyer] to rep – you'd want the assistance of –

JONES:          I would allow Mr. Getting to rep – I mean – I mean, I'm not trying – I would rather not represent myself.

Following this exchange, the judge issued his ruling, citing the Michigan Supreme Court's cases on self-representation.[3] The judge observed that "the thrust of all of these holdings is that a defendant's request to represent himself must be unequivocal. He must assert this right to self-representation knowingly, intelligently and voluntarily." The judge concluded that Jones's request did not meet these criteria. The request was not unequivocal because the only rationale expressed by Jones "for discharging his attorney, at this time, is to get a copy of the police report; and, thereby, to represent himself. That is not, I think, a statement of unequivo[cality] [sic] that is required and mandated by the case law." In the judge's view, "what really this gets down to is a question of the propriety of – of withholding a police report from the custody or possession of a defendant." For two primary reasons, the judge concluded the application of the state's discovery policy to Jones's

---

[3]*People v. Adkins*, 551 N.W.2d 108 (Mich. 1996); *People v. Dennany*, 519 N.W.2d 128 (Mich. 1994). Interestingly, Jones was a co-defendant in *Dennany*, which held that Jones was entitled to a new trial because the trial court had failed to inform Jones "of the dangers and disadvantages of self-representation." *Id*. at 129.

case was not improper. First, Jones had been afforded an opportunity to review the materials which he was not permitted to possess, to discuss them with his attorney, and to contact state witnesses listed. Second, there were good reasons for the discovery policy, including the state's interest in avoiding the high cost of copying the materials for all criminal defendants and the need to protect the privacy of potential witnesses. An additional factor rounded out the judge's analysis of Jones's request to represent himself; the judge observed at multiple points that Jones and his lawyer had not had significant disagreements regarding trial strategy.

Finally, the judge held as follows:

> All things considered, I think that the position that the Defendant takes is one which, A. Is unreasonable; and, Number two, emphasizes the – the equivocality [sic] of his position in his desire to represent himself. . . . [O]n the record made here today, I cannot find that his request was [] unequivocal, and even if it was that it was voluntarily made. . . . There is no dispute concerning strategies. I find that his request to represent himself, while not being made directly, is made indirectly, and in the format of Mr. Getting's motion; and, accordingly, I find that that request is not unequivocal, in other words, he is equivocating. And, furthermore, [ ] any assertion of the right of self-representation in the facts presented here on the record made this morning would not show he was doing so voluntarily. Um, therefore, it – it is unnecessary – I mean, I think I could stop at the unequivocal issue, but there's – there's really no necessity to get into any off [sic] the other issues because I'm denying the motion to withdraw.

The case went to trial and a jury convicted Jones of felonious assault. He was sentenced to 5 to 8 years in prison.

## II.

Jones moved for reconsideration and sought a new trial; the trial court denied these requests and Jones appealed. The Michigan Court of Appeals affirmed. *People v. Jones*, No. 219147, 2001 WL 726966 (Mich. Ct. App. Feb. 23, 2001) (unpublished opinion). It held that under Michigan law a request to proceed *pro se* must be unequivocal, knowing, intelligent, and voluntary. Jones's request met none of these criteria, in the appeals court's view, because "although [he] adamantly expressed his desire to represent himself and insistently reminded the court of his right to do so, his desire was clearly contingent on how the court ruled with respect to [his] requests that counsel supply him with copies of various documents, and that he be allowed to directly address the court at will." *Id*. at *1. The appeals court further noted that Jones "himself characterized his request to waive counsel and to represent himself as involuntary, claiming that he 'had no choice' but to take the course of action based on the court's refusal to comply with his demands, although he would 'rather not' represent himself." *Id*. Jones applied for leave to appeal to the Michigan Supreme Court but the application was denied. *People v. Jones*, 632 N.W.2d 142 (Mich. 2001).

In a petition he filed *pro se* in the Eastern District of Michigan pursuant to 28 U.S.C. § 2254, Jones raised numerous challenges to his conviction and sentence. The district court denied relief. *Jones v. Jamrog*, (E. D. Mich. 2002) (unpublished opinion). In the district court's view, the state courts reasonably interpreted the fact that Jones's request was contingent on whether the state's discovery policy would remain in effect as an indication that his request was equivocal. Accordingly, the court held that the state courts' denial of his request to proceed *pro se* did not involve an unreasonable application of clearly established law. Jones appeals; the certificate of

appealability is confined to whether federal habeas relief is warranted on his claims that he was deprived of his Sixth Amendment right to represent himself at trial and sentencing.[4]

## III.

In a habeas corpus appeal, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *E.g., Vincent v. Seabold*, 226 F.3d 681, 684 (6th Cir. 2000); *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000). Because this case is controlled by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may only overturn the district court and grant a writ of habeas corpus if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

A legal doctrine is not "clearly established Federal law, as determined by the Supreme Court" unless it is based on "holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Yarborough v. Alvarado*, 541 U.S. 652, —, 124 S. Ct. 2140, 2147 (2004); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). A state court's decision is contrary to clearly established Federal law if it (1) arrives at a legal holding that contradicts a Supreme Court case or (2) involves facts that are materially indistinguishable from a Supreme Court case but nonetheless arrives at a substantially different result. *Williams*, 529 U.S. at 405-406. An unreasonable application of clearly established Federal law occurs "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id*. at 409.

## IV.

In this case, the universe of clearly established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), is narrow. It consists of one decision, *Faretta v. California*, 422 U.S. 806 (1975), the leading Supreme Court decision to reach a holding on the Sixth Amendment right of self-representation at trial. At the time of the Michigan Court of Appeals's decision in this case there were, to be sure, other Supreme Court decisions on the periphery of *Faretta*, but they are not clearly implicated in this case. *See Godinez v. Moran*, 509 U.S. 389, 397-98 (1993) (the competency standard for representing oneself is the same as for standing trial); *McKaskle v. Wiggins*, 465 U.S. 168, 187-88 (1984) (the participation at trial of standby counsel does not necessarily infringe the right to represent oneself).

In *Faretta*, the Supreme Court held that the right to represent oneself in a criminal trial is an independent and affirmative right that inheres in the structure of the Sixth Amendment, i.e., not merely a corollary of the right to waive the assistance of counsel. *Id*. at 819. The Court explained:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor."

---

[4]Jones also moved to represent himself at sentencing; he appealed the trial judge's denial of this motion and the Michigan Court of Appeals affirmed. The district court held that the court's decision was not contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court; however, the district court did certify the issue for appeal. Because we hold that the district court should have granted a conditional writ of habeas corpus in connection with Jones's claim regarding self-representation at trial, his claim regarding self-representation at sentencing is moot.

> Although not stated in the Amendment in so many words, the right
> to self-representation – to make one's own defense personally – is
> thus necessarily implied by the structure of the Amendment. The
> right to defend is given directly to the accused; for it is he who
> suffers the consequences if the defense fails.

*Id*. at 819-20 (footnote omitted) (quoting U.S. CONST. amend. VI).

The Court affirmed the right of self-representation at trial in these bold terms even while admitting that "the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel." *Id*. at 832. Although on average reasonable people might agree that it is in a criminal defendant's best interest to seek representation, ultimately, "[i]t is the defendant . . . who must be free to personally decide whether in his particular case counsel is to his advantage." *Id*. at 835. This choice is at once a choice to exercise an independent Sixth Amendment right, the right to represent oneself, and a choice to forgo another Sixth Amendment right, the right to counsel. The choice, therefore, is in part a waiver and thus must be made knowingly, intelligently, and voluntarily. *Id*.; *Brewer v. Williams*, 430 U.S. 387, 403 (1977); *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938).

In this case, Jones considered his circumstances and decided that "in his particular case counsel [was not] to his advantage." *Faretta*, *supra*, at 835. In accordance with its discovery policy, the state refused to turn over police reports to him, instead providing them only to his attorney. Jones was able to review the reports and discuss them with his attorney, but only when his attorney was available to do so and only for as long as the attorney had time. Consequently, the state's discovery policy presented Jones with a real-world obstacle that he had no choice but to negotiate. The approach he selected was to forgo his right to counsel in order that he might have more time to review the police reports and do counter-investigative work in preparation for his defense at trial. The mere fact that this approach had an obvious and significant cost – the relinquishment of a lawyer's assistance – does not mean that Jones's decision to pursue the approach was involuntary.

*Faretta* itself requires this conclusion. In *Faretta*, the defendant was faced with essentially the same obstacle that confronted Jones – all the attorneys likely to be assigned his case were overloaded with work and therefore not likely to be committed to it. 422 U.S. at 807 (observing that Faretta "did not want to be represented by the public defender because he believed that that office was 'very loaded down with . . . a heavy case load'"). He asked the court to assign him a lawyer who was not a public defender, but the court refused. *Id*. at 811 n.5. Faretta then announced his intention to represent himself and the trial judge warned him against it. Nonetheless, Faretta stood his ground. Because "[t]he record show[ed] that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his free will," and because he "clearly and unequivocally declared to the trial judge that he wanted to represent himself," the Supreme Court held that it was constitutional error not to honor the request. *Id*. at 835-36. The *reason* Faretta cited for wanting to proceed *pro se* did not make him any less competent, nor his decision any less voluntary. This is because Faretta's reason was not that he was being coerced to proceed without counsel but that he concluded it was in his best interest under the circumstances. It follows that in cases where there is no suggestion of coercion, an interpretation of *Faretta* that attaches determinative weight to an otherwise competent defendant's reason for wanting to proceed *pro se* is unreasonable. But this unreasonable interpretation of *Faretta* is precisely the one to which the state courts adhered in Jones's case. The Michigan Court of Appeals on the one hand acknowledged that Jones "adamantly expressed his desire to represent himself and insistently reminded the court of his right to do so," but on the other concluded that "his desire was clearly contingent on how the court ruled with respect to [his] requests that counsel supply him with copies of various documents, and that he be

allowed to directly address the court at will." *People v. Jones*, No. 219147, 2001 WL 726966, at *1 (Mich. Ct. App. Feb. 23, 2001).

It is true that Jones's request was contingent on whether the state's discovery policy would be sustained – e.g., at one point he said, "[i]f the Court is going to follow the local [discovery] policy I absolutely do not want a lawyer, will not accept an attorney," – but this is not the kind of contingency that makes a waiver of the right to counsel involuntary under *Faretta*. To the contrary, this is the kind of contingency built into the calculus of any criminal defendant who elects to waive a constitutional right. Indeed, it makes no difference that Jones at points suggested he "had no choice" but to proceed *pro se* and would have preferred the assistance of an attorney. It was unreasonable to interpret these statements to mean that Jones *literally* did not have a choice – clearly, he did. Jones's statements to the court reflect that he had made the strategic decision that in light of his attorney's commitments, and the limits on his own availability for meetings (he was incarcerated before trial, after all), it would be to his advantage to forego the assistance of counsel but gain an unlimited amount of time to analyze the discovery materials. To sustain the state courts' interpretation of Jones's decision would frustrate the Supreme Court's clearly established holding in *Faretta*; in other words, the state courts unreasonably applied *Faretta*. Indeed, as the Court concluded in that case: "The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Faretta*, 422 U.S. at 834 (quoting *Illinois v. Allen*, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring)).

In sum, the state courts concluded Jones's waiver was involuntary solely because there were identifiable – yet purely hypothetical – circumstances under which Jones would have preferred a lawyer. This was an unreasonable application of *Faretta*. Surely many defendants electing to proceed *pro se* would reconsider if they were guaranteed unfettered access to an attorney of their choosing or, as in this case, unfettered access to materials they consider important to their cases. Surely many defendants electing to waive their right to a jury trial would reconsider if they were guaranteed a jury of people unlikely to be swayed by the heinousness of the charges, or unlikely to be confused by the complexity of the case. Under *Faretta*, however, it is not a court's obligation to determine whether there exists some ideal set of circumstances under which a defendant would reconsider the decision to represent himself. Instead, the court's duty is simpler than that: it is to determine whether, in the case presently before it, however far from ideal the circumstances may be, the defendant's decision to proceed *pro se* is knowing, intelligent, and voluntary. *Faretta*, 422 U.S. at 835; *Zerbst*, 304 U.S. at 464-65. The state courts' only reason for concluding that Jones's decision did not meet these criteria was that he said he would have retained his counsel if it were not for the state's restrictive discovery policy.[5]

---

[5] The dissent fundamentally misconceives the nature of this case. Contrary to the dissent's view, this case does not present the question whether Jones was adequately "advised of the dangers and disadvantages of self-representation," Dissent at 9. (In any event, he was not. The discussion between Jones and the judge centered on why he wanted to proceed *pro se*, not on the disadvantages of doing so.) The question presented is whether it is a reasonable application of *Faretta* to conclude that a defendant's initial election to proceed *pro se* cannot be knowing or voluntary if he admits he would proceed differently in the unlikely event that disadvantageous circumstances beyond his control somehow shifted to his advantage. *Faretta*'s answer to this question is unambiguous, so it is not surprising that the dissent prefers to obfuscate the real issue in the case with statements like "Jones could not directly state that he wanted to represent himself . . . ." Dissent at 9, and "Jones acted in a manner that could be described as obstructionist." *Id*. The reference to Jones's involvement in the *Dennany* case is equally misleading. The trial court in this case did not deny Jones's request to proceed *pro se* because it thought he was drawing on his past litigation experience to improperly manipulate the system (indeed there was no suggestion to that effect), but solely because it mistakenly thought the choice to represent oneself, when made for the reason Jones cited, could never be voluntary.

It must be remembered that Faretta's reason for wanting to proceed *pro se* was that he expected to be assigned an over-worked public defender with little time to devote to his case. The trial court had refused his requests for the appointment of a lawyer who was not a public defender. *Faretta*, 422 U.S. at 811 n.5. Even so, said the Supreme Court, Faretta's decision to represent himself was knowing, intelligent, and voluntary. *Id.* at 835. In neither Faretta's case nor Jones's were there questions of competency, coercion, or sincerity. Each defendant asserted his wish to proceed *pro se* clearly and repeatedly; each had to contend with a real-world obstacle that frustrated his ability to conduct the preparation he thought was necessary for an effective defense. In Faretta's case, the Supreme Court's holding was informed by these realities. In Jones's case, the state courts became wrapped up in irrelevant hypotheticals, which led them to unreasonably apply *Faretta* and conclude that Jones's election to represent himself was not knowing, intelligent, or voluntary.[6] This was a structural error, *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984), the remedy for which is a new trial. Accordingly, a conditional writ of habeas corpus shall be granted so that Jones may be re-tried.

## V.

The judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion. Jones shall be released from the state's custody unless he is retried within 180 days.

---

[6]The state courts held that Jones's request was not unequivocal; the district court saw no reason to disagree. This perplexes us. As our discussion indicates, Jones did not equivocate any more than Faretta did; each defendant acknowledged he would have preferred the assistance of counsel under different, but ultimately hypothetical, circumstances. The Supreme Court described Faretta's request to represent himself as "unequivocal[]." *Faretta*, 422 U.S. at 835.

————————————

## DISSENT

————————————

SILER, Circuit Judge, dissenting. I respectfully dissent, as I believe that the decision of the Michigan Court of Appeals in affirming the conviction was not "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

As the majority declares, the clearly established Federal law comes from *Faretta v. California,* 422 U.S. 806, 836 (1975). In order to assert the right of self-representation, the defendant must knowingly, intelligently, and unequivocally waive his right to counsel. *Id.* at 835-36; *see also United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994)("To assert the right of self-representation, a defendant must do so unequivocally."). Thus, the defendant must make a choice because "[r]equiring an articulate and unmistakable demand of the right to proceed *pro se* decreases the danger of a savvy defendant manipulating these two mutually exclusive rights to put the [trial] court in a Catch-22." *United States v. Cromer*, 389 F.3d 662, 682-83 (6th Cir. 2004).

If the defendant requests to proceed *pro se,* the trial court must examine his request on the record and determine his intentions. The court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that . . . his choice is made with eyes open." *Faretta*, 422 U.S. at 835.

The trial court in this case properly conducted a *Faretta* hearing. After a lengthy discussion with Jones, the court determined that Jones's request was neither unequivocal nor voluntary because he would "rather not" represent himself and had "no choice" but to do so. The court found that Jones both wanted to represent himself and be represented by counsel. Because he could not choose both, his request was equivocal. The Michigan Court of Appeals agreed, determining that Jones's request was "clearly contingent on how the court ruled with respect to defendant's requests that counsel supply him with copies of various documents, and that he be allowed to directly address the court at will." Because Jones could not directly state that he wanted to represent himself, the state court did not unreasonably apply or reach a conclusion contrary to *Faretta*.

As the majority reflects, the Michigan courts followed the Michigan Supreme Court's cases on self-representation, *People v. Adkins*, 551 N.W. 2d 108 (Mich. 1996); and *People v. Dennany,* 519 N.W.2d 128 (Mich. 1994). It is ironic that Jones was one of the appellants in the *Dennany* case. In his prior case, Jones also asked to discharge his attorney and to proceed *pro se.* The trial court granted his request and Jones was convicted thereafter. The Michigan Supreme Court ordered a new trial because the trial court erred by failing to advise Jones "of the dangers and disadvantages of self-representation." *Dennany*, 519 N.W.2d at 129. Now, in the case at bar, Jones was advised of the dangers and disadvantages of self-representation, and the trial court denied his right to represent himself. In his prior case, Jones successfully obtained a new trial because the trial court let him represent himself. In the case at bar, Jones seeks a new trial on the grounds that the court should have allowed him to represent himself. I believe that Jones is "whipsawing" the courts in raising his right to self-representation.

During the course of the proceedings in the state court, Jones acted in a manner that could be described as obstructionist. He insisted on being allowed to address the court at will, and he interrupted the court and the lawyers during the motion hearings. He twice demanded to be removed from the court room because he disagreed with the court's rulings. This constituted serious and obstructionist misconduct that the trial court need not tolerate. The trial court found Jones to be equivocal in his request to represent himself. That is what *Faretta* requires.

On habeas review, a court must "indulge every reasonable presumption" against waiver of the right to counsel. *Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001). Therefore, I would uphold the district court in its denial of the writ of habeas corpus, when it found that the decision of the Michigan Court of Appeals was not contrary to or an unreasonable application of *Faretta.* Thus, I would **AFFIRM** the judgment of the district court.