NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0363n.06
Filed: May 24, 2006

No. 04-4019

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GINGER A. MANNING,

      Petitioner-Appellant,

                                                           On Appeal from the United
v.                                             States District Court for the
                                             Northern District of Ohio

SHIRLEY ROGERS,

      Respondent-Appellee.

_____/

BEFORE:    RYAN, CLAY, and GILMAN, Circuit Judges.

      RYAN, Circuit Judge.      Ginger A. Manning appeals a district court's decision denying her 28 U.S.C. § 2254 habeas corpus petition. Because the state court's decision was not "contrary to" or "an unreasonable application of" United States Supreme Court precedent, see 28 U.S.C. § 2254(d), we **AFFIRM** the district court's judgment.

**I.**

      The facts of petitioner Manning's crime are not in dispute. In the early morning hours of March 8, 1990, Manning shot her husband, Todd Manning, in the head with a small caliber pistol and he died a day or so later.

      Two months before shooting Todd, Manning was told by Loraine County, Ohio, Children Services that Todd was sexually molesting her daughter. Todd, who was not the child's biological father, was forced to move from the trailer where he was living with Manning and the child. Manning later became convinced that Todd had not molested the

child, and she permitted him to return.  But several weeks later, Todd admitted to Manning that indeed he had molested the child.  Manning attempted to call the police, but Todd threatened her, saying he would kill her and her daughter if she did so.  Manning went to bed with the child.  She eventually got up, opened a beer, and sat down to watch television with Todd.  After he fell asleep on the living room couch, Manning retrieved a gun from the bedroom, loaded it, returned to where Todd was sleeping and shot him in the head.  He expired 36 hours later.  Shortly after the shooting, Manning called the police to report what had happened.  When the police arrived, Manning told them she thought Todd was a burglar who had broken into the house and fallen asleep on the couch.  Thinking him an intruder, Manning shot Todd in the head.  She would later say, however, that she really shot Todd because she had recalled past instances of abuse, which made her fear for her and her daughter's safety.

The State of Ohio indicted Manning for aggravated murder with a firearm.  At the trial, Manning raised Battered Woman Syndrome (BWS) as a defense and presented the expert testimony of Dr. Lynne Rosewater, a clinical psychologist who had interviewed Manning.  The court ruled that Dr. Rosewater was qualified to testify as an expert witness, as was the State's witness, Dr. Phillip Resnick, who likewise had interviewed Manning.  After a five-day trial, a jury found Manning not guilty of aggravated murder but guilty of the lesser offense of murder (Ohio Rev. Code Ann. § 2903.02(A)) with a firearm specification (Ohio Rev. Code Ann. § 2929.71).  On July 3, 1990, Manning was sentenced to incarceration for a term of fifteen years to life for the murder conviction and three years for the firearm specification.

In her direct appeal to the Ohio Court of Appeals, Manning brought eleven assignments of error, none of which were convincing to the court. On May 8, 1991, the court affirmed Manning's conviction and sentence. The Supreme Court of Ohio denied a motion for leave to appeal and a motion for a rehearing. On May 18, 1992, the United States Supreme Court denied a petition for certiorari, thereby completing Manning's direct appeal.

Fours years later, on September 20, 1996, Manning sought post-conviction relief in the Ohio trial court, alleging that her conviction and sentence should be set aside because, inter alia, she was denied effective assistance of counsel, in violation of the Sixth Amendment of the United States Constitution. The trial court denied the motion, its decision was affirmed by the Ohio Court of Appeals, and an appeal to the Ohio Supreme Court was dismissed. After additional unsuccessful state proceedings, Manning filed a petition in the federal district court seeking habeas relief under 28 U.S.C. § 2254. She alleged four grounds of relief, including the claims that her counsel was ineffective and that she was denied due process of law and a fundamentally fair trial. The district court denied the § 2254 petition on all grounds and then issued a certificate of appealability for the ineffective assistance of counsel (IAC) claim only. Manning sought a certificate of appealability from this court as to her other claims, but her request was denied. Therefore, the only question before us is whether the federal district court erred in denying Manning's ineffective assistance claim, which the district court characterized as follows:

> Petitioner was deprived of her right to the effective assistance of counsel by counsel's use of an expert who incompetently prepared and presented the "battered woman syndrome" evidence in support of her defense of self-defense.

## II.

When reviewing the habeas decision of a district court, we review legal conclusions de novo and findings of fact for clear error. Jones v. Jamrog, 414 F.3d 585, 590 (6th Cir. 2005). De novo review does not extend, however, to the underlying state adjudication. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas relief only if the state court proceedings resulted in a decision that was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "(2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (West Supp. 2005).

The United States Supreme Court clarified the § 2254(d)(1) standard in Williams v. Taylor, 529 U.S. 362 (2000), holding that, for purposes of § 2254(d)(1), a state court adjudication is contrary to "clearly established Federal law" only "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or . . . decides a case differently than this Court has on a set of materially indistinguishable facts." Id. at 413. The state court's adjudication is unreasonable "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." Id.

The AEDPA standard guides our review of Manning's IAC claim, but the substantive law underlying her claim is found in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that a defendant alleging denial of effective assistance of counsel in violation of the Sixth Amendment, must show two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.  The Court stressed that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

### III.

Manning alleges that the decision of the Ohio Court of Appeals, while not contrary to the Supreme Court's statement of law in Strickland, was an objectively unreasonable application of Strickland for purposes of § 2254(d)(1).

Her initial argument is that the Ohio Court of Appeals' application of Strickland was unreasonable because it mischaracterized her attack on "the validity of Dr. Rosewater's [(Manning's trial expert's)] evaluation . . . as a mere attack on trial counsel's strategy" in utilizing Dr. Rosewater as an expert witness.  (Emphasis added.)  This argument rather plainly reveals that the petitioner does not appreciate that the Strickland standard is concerned with the performance of counsel, not the "validity" of the testimony of an expert witness.  The petitioner's burden is to "show that counsel's performance was deficient," Strickland, 466 U.S. at 687 (emphasis added), not a witness's.  While the "validity," as Manning puts it, of an expert witness's performance may be relevant to an IAC claim, it is relevant only insofar as it bears upon the question whether the attorney's performance was deficient.  Poyner v. Murray, 964 F.2d 1404, 1419 (4th Cir. 1992).  The Ohio Court of

Appeals did not mischaracterize Manning's claim when it observed that her argument regarding her expert witness's disappointing testimony did not make out a Strickland argument because it did not relate to her attorney's decision to rely on that expert.

Second, Manning argues that the Ohio Court of Appeals unreasonably applied Strickland because it considered her attorney's action at trial to be a strategic choice not to present "childhood abuse" evidence along with the BWS evidence. Manning claims that the "court could not have read the post-conviction material and still have characterized the issue as a matter of strategic choice" since the "post-conviction affidavit" of Dr. Jill Bley established that "the childhood PTSD and the BWS" were inseparable for purposes of understanding Manning's actions. In practical terms, Manning argues that the Ohio Court of Appeals did not meaningfully consider the post-conviction documents since it reached a conclusion that did not comport with the opinion expressed by Dr. Bley, Manning's post-conviction expert.

The mistaken assumption here is that an affidavit in which an expert critiques the analysis and conclusions of an expert who testified at trial should be fully included in the assessment of whether counsel was effective at trial. On the contrary, Strickland instructs that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Obviously, it was not an unreasonable application of Strickland for the Ohio Court of Appeals to fail to adopt the post-conviction conclusions of Dr. Bley

about the "validity" of Dr. Rosewater's expert opinion in deciding what strategies Manning's trial counsel reasonably should have pursued.

Third, Manning also argues that the Ohio Court of Appeals applied Strickland unreasonably since, in her view, "[t]he court's decision betrays no indication that it inquired into the reasonableness of counsel's purported strategic decision" prior to finding that the challenged attorney conduct was a strategic choice. To the extent that we understand Manning's argument, it seems to be that the Ohio courts simply assumed that Manning's counsel made a strategic choice to rely upon Dr. Rosewater's protocol, which did not include evidence of child abuse, without first evaluating whether the attorney actually made a choice to go with Dr. Rosewater's "protocol" as opposed to a protocol like that in Dr. Bley's post-verdict opinion. She cites to Wiggins v. Smith, 539 U.S. 510 (2003), for the proposition that a state court must consider the reasonableness of counsel's strategy before finding that a decision constitutes a strategic choice. But Wiggins dealt with attorneys who presented no mitigation evidence at the sentencing phase of a capital case because, despite evidence of long-term physical, sexual, and emotional abuse, they chose to present a factual argument and did not investigate their client's "life history." Id. at 523-24. The state court, in what the Supreme Court found to be an unreasonable application of Strickland, "merely assumed that the investigation was adequate" and determined that the decision of counsel not to investigate further was a strategic choice without considering the reasonableness of it. Id. at 527.

The differences between Wiggins and the present case are telling. Wiggins dealt with the penalty phase of a capital case where the standard practice was to include a

"social history report." Id. at 524. Manning, however, criticizes her counsel for failing to make a strategic decision to pursue evidence of childhood abuse at the guilt phase of her trial, under the theory that the childhood abuse should have been considered a necessary part of BWS. Accordingly, the reasonableness of her attorney's investigation is not determined by whether he compiled a "social history report," but whether, in light of the evidence then before him, he conducted a sufficient inquiry into a BWS defense. See id. at 526. In this regard, the Ohio Court of Appeals noted that Manning's attorney pursued a BWS defense; that the expert chosen to present that defense was qualified; and that the expert's actual testimony contradicted the state's theory of guilt. Considering all of these factors, the court determined that counsel's decision to pursue a BWS defense with Dr. Rosewater as the expert witness could not be considered unsound trial strategy. In light of this, we cannot hold that the Ohio Court of Appeals is guilty of the same omission as was found in Wiggins, and we do not find its application of Strickland unreasonable.

Finally, Manning devotes the remainder of her brief to arguments that lie beyond the scope of our review. First, she claims that the federal district court committed "fundamental errors" in its analysis of her claim and that this "alone" constitutes grounds for reversal. This court, however, has reviewed the legal merits of Manning's habeas claims de novo, and, taking them in the best light in which she presents them, has found them without merit in the context of an appeal under AEDPA.

Second, Manning argues that the performance of her counsel was in fact ineffective. We are not at liberty, however, to sweep aside the finding of the Ohio Court of Appeals and conduct a de novo review of Manning's IAC claim. The limits of our review are sharply

defined by the wording of AEDPA.  Manning's merit arguments represent an effort to expand her claim beyond the review contemplated by AEDPA.

**IV.**

We conclude that the Ohio Court of Appeals did not unreasonably apply the standard of Strickland.  The decision of the district court denying Manning's § 2254 petition for habeas relief is, therefore, **AFFIRMED**.

**CLAY**, **Circuit Judge, concurring.**   While I agree with the conclusion that the majority reaches, I write separately to emphasize that an expert witness' competency may be relevant to an assessment of counsel's performance under *Strickland*.   In order to determine whether counsel's decision to employ a particular expert was reasonable under prevailing professional norms, *see Strickland*, 466 U.S. at 689, the court must ask whether counsel knew, or would have learned after reasonable investigation, that the expert was either incompetent or not properly suited for the requirements of the case, *see id.* at 691. This inquiry necessarily requires the court to consider whether counsel knew or, in the exercise of reasonable diligence should have known, of the expert's incompetency; however, it may also require a court to consider whether the expert was competent.  *See Skaggs v. Parker*, 235 F.3d 261, 270 (6th Cir. 2001) (holding that counsel performed deficiently where counsel witnessed expert's incompetence firsthand at trial and nonetheless recalled the expert to the testify at the penalty phase).

In this case, Plaintiff's ineffective assistance of counsel claim fails because she cannot demonstrate that her counsel knew, or would have learned after reasonable investigation, that Dr. Rosewater's testimony was either below the standard of professional care or unsuited for Plaintiff's case.   The fact that the state's expert took a different approach than Dr. Rosewater was insufficient to put counsel on notice that Dr. Rosewater may not have been an appropriate expert witness under the circumstances.  Similarly, Dr. Bley's affidavit evidences only that experts disagree on Battered Woman's Syndrome, and not that Dr. Rosewater's testimony was incorrect.

Nonetheless, Dr. Bley's affidavit is not irrelevant to counsel's performance simply because it was presented in post-conviction proceedings. While counsel could not have been aware of Dr. Bley's opinion at trial, counsel had an obligation to conduct a reasonable investigation into the trial experts' qualifications. *Cf. Skaggs*, 235 F.3d at 268 ("[Counsel] located [the expert] and retained his services in much the same way many trial attorneys obtain an expert: through recommendations from colleagues and general familiarity within the legal community . . . considering counsel's general familiarity with [the expert] and [counsel]'s utilization of [the expert] in the past, we hold that counsel's failure to conduct a full blown investigation . . . did not fall below an objective standard of reasonableness."). In some cases, such investigations into competency of experts may require counsel to recognize the existence of conflicting expert opinions. Counsel's failure to properly investigate trial experts' background and qualifications cannot later shield counsel from the presentation of conflicting expert opinions in post-conviction proceedings. In this case, however, Dr. Bley's affidavit is irrelevant because it does not establish that counsel failed to conduct an adequate investigation, or that Dr. Rosewater was unsuited to testify on this case, but only that one expert, Dr. Bley, would have testified differently.